FREDERICK G. CHISHOLM, *Appellant*, vs. MARJORIE CHISHOLM, *Appellee*.

141 So. 302.

En Banc.

Opinion filed May 3, 1932.

*Eugene M. Schwarzenberg,* of New York City, for Appellant;

*George P. Garrett,* for Appellee.

ELLIS, J.—Frederick Chisholm appealed from a decree of divorce obtained by his wife in Brevard County on June 4, 1930.

Appellant contends that the complainant failed to show proof of a legal residence in Florida for two years next preceding the institution of her suit. This bill was filed January 29, 1930, and the ground alleged was desertion wilful, obstinate and continuous for one year. It is also contended that the evidence does not establish such ground, that there can be no desertion of complainant pending a prior suit for divorce by her; that the complainant was living with another man as his wife during the period of alleged desertion by the defendant, therefore it cannot be said that his absence was desertion of his wife, and that the Chancellor committed reversible error in not reopening the case to permit the defendant to introduce in evidence the "judgment roll of the former trial." The latter point relates to the first suit by Mrs. Chisholm in which the decree was held to be void for lack of jurisdiction because of complainant's lack of two years' residence in Florida. Chisholm v. Chisholm, 98 Fla. 1196, 125 South. Rep. 694.

In the first proceeding the final decree was entered December 6, 1926. The judgment of this Court holding the decree to be void was filed December 31, 1929. Mrs. Chisholm married again within six months after the date of the decree of divorce. There is some confusion in the record about the date. She said it was March, 1926,

which was impossible if the marriage occurred after the decree of divorce in December, 1926. She married her solicitor Mr. Watts while the appeal from the divorce was pending in this court. She lived with her second husband about three months and obtained a divorce from him. It does not appear when that proceeding began and terminated nor whether it was a divorce upon some statutory ground or whether it was a proceeding for an annulment of the so-called marriage. Neither party nor their solicitors appear to have been interested in the point. In any event, the separation occurred before the decision of this court in the Chisholm case, *supra*, was rendered.

Assuming that such conduct of Mrs. Chisholm may technically be regarded as bigamy, there is no suggestion of immorality in her conduct and she quickly relieved herself of the undesirable situation, presumably upon discovering the questionable legality of it and then when free from it brought the present suit within a month after the decision of this court was rendered.

Counsel for appellant refer to the first decree as having been obtained by fraud perpetrated upon the court by Mrs. Chisholm. We do not regard her conduct nor her testimony as properly to be described by that term in its offensive or worse sense, nor did this Court so characterize it. The decree was merely declared to be void because the jurisdictional fact of two years' residence was held to be not established and that material fact could not be established by complainant alone, that there was not sufficient corroborating evidence.

While it was highly imprudent for her to marry again while the appeal was pending, she doubtless relied upon the opinion of her counsel, whom she married and whose importunity probably outweighed his legal acumen, and there was therefore nothing of a meretricious character in her act so far as the moral aspect of it is involved.

We do not regard her act therefor as constituting adultery such as would preclude her from maintaining a suit for divorce upon statutory grounds against her husband whose status as such is purely technical, depending upon the legally insufficient proof of the wife's legal residence in Florida for the requisite two years next before beginning her suit. Whatever of technically adulterous conduct the wife may have been guilty by her marriage and cohabitation with Watts pending the appeal there is present the element of her husband's continuous misconduct amounting to abandonment and desertion of his wife, his failure to provide a home for them, or to supply her with funds to maintain herself and leaving her for a long period of time without means of support.

In the case of Moore v. Moore, 102 Tenn. 148, 52 S. W. Rep. 778, it was held that where a husband leaves his wife even for just cause but makes no provision for her, thereby leaving her without means of support, he is not entitled to a divorce on the ground of adultery committed after the separation. There seemed however to be a statutory ground for that view.

It has also been held that when a husband wilfully deserts his wife whom he had seduced before the marriage he thereby conduces to adultery thereafter committed by her. Moss v. Moss, 2 Ired. L. (24 N. C.) 55; Tew v. Tew, 80 N. C. 316, 30 Am. Rep. 84. That State however in later years seems to have reversed its former position. Other states hold to the more reasonable and perhaps sounder doctrine that when one party commits an act affording grounds for divorce against the other the court will not grant the prayer of such an one for divorce from the other. Wilson v. Wilson, 89 Neb. 749, 132 N. W. Rep. 401; Church v. Church, 16 R. I. 667, 19 Atl. Rep. 244, 7 L. R. A. 385.

In the two North Carolina cases cited above however the same reason lies behind the decision, in the former be-

hind the statute on which the decision rests. That doctrine is: a marriage may not be dissolved at the instance of the party to whom default in any of the essential duties of married life is fairly imputable. When, therefore, a divorce is sought for a cause supervening separation it must be enquired whether that cause probably grew out of the separation and whether the separation was the act and so the fault of both the parties or of one of them and which.

Belief in the termination of a former marriage is regarded in some jurisdictions as a defense to a prosecution for bigamy. The immoral element must exist in the second marriage, that is, such knowledge of the fact of its irregularity as the entering into it would render the relation immoral, before it may be said that the second marriage is bigamous. The above view however seems not to obtain in the greater number of American jurisdictions and in the English courts. Some of them however hold that an honest belief in the death of a spouse or reasonable ground to believe in the validity of a divorce was admissible in mitigation of punishment and so in effect apply the maxim *"non est reus nisi mens sit rea"*; one is not guilty unless his intention be guilty.

In the case at bar however Mrs. Chisholm entered upon her second marriage after a decree of divorce from her husband had been entered by a court of competent jurisdiction. It would seem to be unreasonable to the degree of absurdity to say that because the court had erred in holding that the fact on which the court's jurisdiction rested had not been established by a sufficient degree of proof that she was therefore chargeable with a criminal intent.

The decree was made on December 3, 1926, and entered December 6th, three days afterward. Sometime in March, 1927, she married Watts. On the 19th day of December,

1927, after Mrs. Chisholm's marriage to Watts and after she had ceased to live with him, Mr. Chisholm filed a motion to vacate the decree. The court in March, 1928, referred the petition or motion to a special examiner to report the facts to the court. Testimony was taken and on June 20, 1928, the court denied the motion to vacate the decree. To that order an appeal was taken and this court ordered that the decree denying the motion to vacate the decree of divorce should be reversed. Chisholm v. Chisholm, *supra.*

The above statement of fact is taken from the record in the above stated case. No appeal was ever taken from the decree of divorce, consequently there was no supersedeas of that decree.

In such case as the one at bar we think that the rule announced by the Louisiana court in State v. Cain, 106 La. 708, 31 South. Rep. 300, is the more logical view with respect to the mental element of the crime of bigamy which was stated as follows: "the criminal intent of the accused is presumed to exist whenever a statute has made it criminal to do any act under particular circumstances, and the party voluntarily does the act, he is thereby chargeable with the criminal intent by the doing of the act" but as applied to bigamy "if a man married to one woman marries another he may be chargeable with the intent necessary to constitute the crime of bigamy, and, if he claimed to have contracted a second marriage in the honest belief that the first had been dissolved by a decree of divorce, the onus was upon him to establish to their (the jury's) satisfaction that he had reasonable grounds for such belief, and did in fact so believe." This view avoids the necessity of the forced construction adopted by the English court, while enabling the victim of circumstances to secure the exoneration which natural justice demands.

In the circumstances of this case we are of the opinion

that the technical guilt of bigamous or adulterous conduct which may attach to Mrs. Chisholm is not sufficient to impart to her act that degree of criminality or immoral purpose which would preclude her from the remedy she seeks in the case which is now before the court. The meaning of the word in the second clause to the third paragraph of Section 4983 C. G. L. 1927, which provides that no divorce shall be granted where both parties have been guilty of adultery, is the common law meaning which includes the criminal intent which may be shown by the voluntary act but where the act is performed in the belief of the existence of a valid marriage the burden is upon the State to show that the person accused knew that the other had a living wife or husband. Banks v. State, 96 Ala. 78, 11 South. Rep. 404; Vaughn v. State, 83 Ala. 55, 3 South. Rep. 530; 2 C. J. 25.

The evidence was sufficient to support the decree of the chancellor upon the other points raised by the appeal.

The conduct of Mr. Chisholm was most reprehensible; his failure to provide a home for his wife, the humiliation to which he subjected her by desiring her to accept the bounty of his grandmother and his wife's father as the only means of a livelihood, his contracting debts without ability to repay and use of the money thus obtained in gambling and intemperate drinking, shown by one or more of her letters and finally his voluntary separation from her and failure to contribute to her support as it appears from the record is such conduct as may very well be said to have been the cause of the separation of himself and wife. The proof of her residence for two years next preceding the filing of the bill is ample.

In the circumstances the husband's residence in another State cannot be said to have been his wife's residence or domicile because the husband's failure to respond to his marital obligations amounting to a virtual abandonment

of his wife authorized the establishment by her of a separate residence in Florida. 30 C. J. 512; 9 R. C. L. 544.

No error appearing in the record the decree of the Chancellor is affirmed.

WHITFIELD, TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., AND BROWN, J., concur in the conclusion.