Thomas E. Webb, Jr. ("the husband"), appeals a divorce judgment entered by the Mobile Circuit Court. We affirm in part, reverse in part, and remand.
On October 6, 2004, Carolyn P. Webb ("the wife") sued the husband for a divorce on the grounds of incompatibility, irretrievable breakdown of the marriage, and adultery. In her complaint, the wife requested, among other things, custody of the parties' four minor children, child support, and alimony. The husband, answering on January 11, 2005, denied the allegation of adultery and counterclaimed for, among other things, a divorce on the grounds of incompatibility and irretrievable breakdown of the marriage.
On March 2, 2005, the trial court received evidence ore tenus. On March 7, 2005, the trial court entered a judgment granting the parties a divorce on the grounds of the husband's adultery and the parties' incompatibility. In addition, it awarded the wife primary physical custody of the parties' four minor children and $1,891 in monthly child support. The judgment also awarded the husband visitation rights, but it restricted his right to exercise visitation to his home. It also awarded the wife, among other things, $750 in monthly periodic alimony and $8,000 of the husband's retirement benefit. Additionally, it ordered the husband to pay, among other things, COBRA health insurance on the wife's behalf for a period of two years. Furthermore, the judgment awarded the parties certain marital properties and allocated various marital debts.
The husband moved the trial court to alter, amend, or vacate its judgment on March 24, 2005. The trial court denied the husband's postjudgment motion, and the husband timely appealed.
The following facts were undisputed. The husband and the wife married in September 1994. Four children were born of the marriage. The wife worked as a homemaker for the majority of the marriage. The husband works for GE Inspection Services and earned a gross income of $89,400 in 2004. The husband, who frequently travels for extended periods of time in connection with his job, had been working in Burlington, Washington, for a year before the parties' separation.
On appeal, the husband argues that the trial court erred in divorcing the parties on the ground of adultery. The wife testified that the parties separated when she discovered, in September 2004, that the husband was having an adulterous affair. According to the wife, she inadvertently called the husband's alleged paramour, who told her that she had been having an affair with the husband. The wife also testified that she spoke with the alleged paramour's friend, who told her that the husband and the alleged paramour had been vacationing in Miami, Florida, and that the husband had been living with the alleged paramour while he was working in Washington. Afterwards, the wife confronted the husband regarding his alleged infidelity. When he was confronted, according to the wife's testimony, the husband apologized for the affair. The wife then told the husband that she would forgive him under certain conditions. However, according to the wife, the husband stated that he no longer loved the wife and that their marriage was over. The husband then left the marital residence that same day.
In addition, the wife testified that Lloyd Hull, the husband's friend, told her that the husband had committed adultery throughout the marriage and that the husband had been bringing his paramours to Hull's home to have sexual relations. According *Page 325 
to the wife, when she confronted the husband with Hull's allegations, the husband apologized for his conduct rather than denying that it had occurred.
Furthermore, the wife testified that she confronted the husband regarding affairs he had allegedly had with seven different people during the marriage. According to the wife, the husband never denied her allegations regarding those affairs. The wife also testified that, on another occasion, the husband had admitted that he had had numerous affairs throughout the marriage.
As circumstantial evidence of the husband's alleged acts of adultery, the wife introduced evidence of charges ranging from $125 to $140 for meals and charges ranging from $30 to $40 for drinks the husband had incurred at various restaurants and bars during a trip to Miami. However, the husband testified that he had incurred those charges by purchasing meals for himself or by purchasing drinks for himself and a male friend.
When the wife's counsel cross-examined the husband regarding whether he had committed adultery and whether he had been living with his alleged paramour, the husband responded by invoking the privilege against self-incrimination provided by the Fifth Amendment to the United States Constitution. However, in other portions of the husband's testimony, he denied having a girlfriend, denied going to Hull's house to have sexual relations, denied vacationing with his alleged paramour in Miami, and denied having lived with his alleged paramour in Washington. Additionally, the husband testified that the last time he stayed in a hotel in Washington was in December 2004. He also stated that he did not incur credit-card charges for hotel expenses but instead paid those expenses in cash. Furthermore, when questioned about his relationship with one of his alleged paramours, the husband stated that they were only friends.
"`While it is difficult and some-what rare to prove adultery by direct means, the charge of adultery in a divorce case may be proven by circumstantial evidence which creates more than a mere suspicion.'" Fowler v. Fowler, 636 So.2d 433, 435
(Ala.Civ.App. 1994) (quoting Billington v. Billington,531 So.2d 924, 924 (Ala.Civ.App. 1988)). Furthermore, "proof [of adultery] must be sufficient to lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as anecessary inference. Hooker [v. Hooker,593 So.2d 1023 (Ala.Civ.App. 1991)]." Langley v. Langley,617 So.2d 678, 679 (Ala.Civ.App. 1992) (emphasis added).
This court has also stated: "The testimony of one spouse as to the other spouse's confession of adultery is, alone, insufficient to warrant a divorce on the grounds of adultery. . . ." Yates v. Yates, 676 So.2d 365, 366
(Ala.Civ.App. 1996); see also § 30-2-3, Ala. Code 1975. Additionally, our supreme court has stated: "It is clear under our decisions that confessions of a party in a divorce suit must be corroborated." Watson v. Watson,278 Ala. 425, 428, 178 So.2d 819, 821 (1965) (citing Lunsford v.Lunsford, 232 Ala. 368, 168 So. 188 (1936)). Furthermore, "`the mere admission or confession of adultery on the part of the defendant, without any substantive evidence
whatever of the delictum, is not sufficient or proper evidence to authorize a court to dissolve the marital bonds. . . .'"Watson, 278 Ala. at 428, 178 So.2d at 821 (quotingHall v. Hall, 93 Fla. 709, 112 So. 622 (1927)) (emphasis added).
Although a party's invoking the privilege against self-incrimination in response to questions regarding adultery raises a presumption against that party, Langley,617 So.2d at 680, this court has also stated: *Page 326 
 "[T]he `presumption that operates against a party claiming the privilege' is not `sufficient proof to lead the guarded discretion of a reasonable and just mind to the conclusion that the act of adultery was committed as a necessary inference. In other words, a presumption against a party is not sufficient competent and legal evidence that the party has committed adultery."
Langley, 617 So.2d at 680; see also Mosley v.Mosley, 747 So.2d 894, 899 (Ala.Civ.App. 1999).
We conclude that the evidence of the husband's alleged adultery introduced by the wife in the case now before us was insufficient to support the trial court's divorcing the parties' on the ground of the husband's alleged adultery. First, the wife's testimony that the husband admitted committing adultery was insufficient without corroboration by "substantive evidence." Watson, 278 Ala. at 428,178 So.2d at 821. Second, none of the wife's other evidence of the husband's alleged adultery constituted "substantive evidence" of adultery. Id.
The wife's testimony that the husband's alleged paramour confessed to adultery and that Hull stated that the husband had committed adultery were not sufficient. See Hubbard v.Hubbard, 55 Ala.App. 521, 317 So.2d 489 (Civ.1975) (holding that the testimony of the paramour's spouse regarding the paramour's confession of adultery with the husband was insufficient to corroborate the wife's testimony regarding the husband's extrajudicial confessions of adultery). The evidence that the husband had incurred charges ranging from $125 to $140 for meals and charges ranging from $30 to $40 for drinks was not sufficient. While the husband's incurring such charges could possibly indicate that the husband was entertaining a paramour, it does not necessarily lead to that inference — the husband could have incurred the charges eating and drinking by himself or by entertaining one or more male guests. Consequently, it is not substantive evidence of adultery.See Langley, 617 So.2d at 679 ("[P]roof [of adultery] must be sufficient to lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as anecessary inference." (emphasis added)). Similarly, the nonexistence of hotel bills is insufficient because it does not "lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference."Id. (emphasis added). Finally, the husband's invoking the privilege against self-incrimination is not sufficient. SeeLangley, supra; cf. Anonymous v. Anonymous,353 So.2d 510 (Ala.Civ.App. 1977), rev'd on other grounds,353 So.2d 515 (Ala. 1977) (holding that other evidence,standing alone, was sufficient to support a finding of adultery when the allegedly adulterous wife and her alleged paramour invoked the privilege against self-incrimination).
In his special writing, Judge Pittman suggests that the supreme court, by stating in King v. King,28 Ala. 315, 319 (1856), that a court cannot grant a divorce on the ground of adultery when extrajudicial admissions of adultery constitute the only evidence of adultery, implied thatany additional evidence of adultery will suffice to corroborate the extrajudicial admissions. However, that is not the case; the extrajudicial admissions must be corroborated by "substantive evidence" of adultery, i.e., evidence that would "lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference."Langley, 617 So.2d at 679 (emphasis added).
Therefore, the trial court erred in granting a divorce on the ground of adultery. Consequently, we must reverse the judgment *Page 327 
insofar as it granted a divorce on the ground of adultery.
The husband also argues that the trial court erred in awarding the wife $750 in monthly periodic alimony. He argues that the judgment should be reversed because, he says, the trial court erred in fashioning its periodic-alimony award by considering adultery as a ground for the divorce. He also argues, without citing any authority, that the trial court's judgment ordering him to pay the wife $1,891 in monthly child support, the indebtedness on the wife's 2004 Ford Explorer, the wife's COBRA health insurance, and $750 in monthly periodic alimony, in essence, financially "cripples" him.
Based on our review of the evidence, we conclude that the trial court did not abuse its discretion in awarding the wife $750 in periodic alimony, regardless of whether it considered adultery as a ground for the divorce. See Ragan v.Ragan, 655 So.2d 1016, 1018-19 (Ala.Civ.App. 1995) (reversing the judgment divorcing the parties on the ground of adultery and affirming the trial court's award of alimony and allocation of marital property). Additionally, we conclude that the trial court did not abuse its discretion in ordering the husband to pay for COBRA health insurance on the wife's behalf and allocating various marital debts. Furthermore, we conclude that the trial court did not err in awarding the wife $1,891 in monthly child support, which was in compliance with the Child Support Guidelines set forth in Rule 32, Ala. R. Jud. Admin.
The husband also argues, and the wife concedes, that the trial court erred in awarding the wife $8,000 of the husband's $15,000 retirement benefit. Section 30-2-51(b)(3), Ala. Code 1975, states that a trial court has discretion to award a noncovered spouse no more than 50 percent of a covered spouse's retirement benefit. Because the trial court's judgment awarding the wife $8,000 exceeds 50 percent of the husband's $15,000 retirement benefit, we must reverse the judgment insofar as it awarded the wife more than 50 percent of the husband's retirement benefit.
Last, the husband argues that the trial court erred in restricting his visitation with the children to his home. Regarding visitation, this court has previously stated:
 "We recognize that the determination of visitation rights for the noncustodial parent rests within the discretion of the trial court, and we will not reverse a judgment determining visitation except for an abuse of that discretion. Ladewig v. Moxley, 589 So.2d 738 (Ala.Civ.App. 1991). In exercising its discretion in awarding visitation rights, the trial court's primary consideration must be the best interests and welfare of the children, and each case must be decided on its own facts. Durham v. Heck, 479 So.2d 1292 (Ala.Civ.App. 1985)."
Mann v. Mann, 725 So.2d 989, 992 (Ala.Civ.App. 1998).
At trial, the wife testified that the husband had a problem with excessive alcohol consumption. The wife testified that she had discovered that problem when she learned that he had been arrested in April 2004 for driving under the influence of alcohol in Washington. The husband, however, denied that he has a problem with excessive alcohol consumption. Furthermore, he testified that he pleaded guilty to a charge of negligent driving. The husband did admit that the arresting police officer stated that he smelled alcohol on the husband and that the husband's speech was slurred. However, the husband had never been previously arrested for driving under the influence. Additionally, the husband testified that he has a valid Alabama driver's license. The wife, *Page 328 
on the other hand, testified that the husband did not possess a valid driver's license and that his driver's license had been revoked. She also testified that she is concerned about the possibility of the husband's driving under the influence of alcohol while the children are in his care.
This court has stated: "In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief. Brown v. Brown,586 So.2d 919 (Ala.Civ.App. 1991)." demons v. demons,627 So.2d 431, 434 (Ala.Civ.App. 1993). Based on the wife's testimony, the trial court could have concluded that the husband had a problem with consuming excessive amounts of alcohol and that his excessive consumption of alcohol could place the children at risk while they were in his care. Therefore, the trial court could have concluded that it was in the best interest of the children to restrict the husband's visitation to his home. Consequently, the trial court did not abuse its discretion by imposing that restriction.
We reverse the judgment insofar as it granted the divorce on the ground of adultery and awarded the wife more than 50 percent of the husband's retirement benefit. In all other respects, we affirm the judgment. We remand the case for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., concurs specially, with writing, in which THOMPSON, J., concurs.
PITTMAN, J., concurs in part and dissents in part, with writing, in which MURDOCK, J., concurs.
MURDOCK, J., concurs in part and dissents in part, with writing.